**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID VANCE GARDNER, JEANNETTA MCELROY, and EARL HAYES individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MeTV, a National Limited Partnership<br><br>Defendant. | Case No.<br><br>**JURY DEMAND**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>1. Video Privacy Protection Act, 18 U.S.C. § 2710;<br>2. Unjust Enrichment. |

Plaintiffs David Vance Gardner, Jeannetta McElroy, and Earl Hayes on behalf of themselves and all others similarly situated, allege as follows based on personal knowledge and on information and belief based on investigations of counsel.

**INTRODUCTION**

1. This is a consumer privacy class action against MeTV, a National Limited Partnership ("MeTV") for disclosing its digital subscribers' identities and video-viewing preferences to Meta Platforms Inc. ("Meta"), which owns the social networking website and app Facebook, in violation of the Video Privacy Protection Act ("VPPA" or "the Act") and state law.

2. The VPPA prohibits "video tape service providers," such as MeTV, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," unless the consumer expressly consented to the disclosures in a standalone consent form.

3. MeTV collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel"—a snippet of programming code that, once installed on a webpage, sends

1

information to Meta. The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

4. The information that MeTV shares with Meta includes the user's unique Facebook ID ("FID") and the titles of prerecorded videos that MeTV delivered to the user for viewing. A user's FID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

5. MeTV discloses the user's FID and viewing content to Meta together in a single transmission. Because the user's FID uniquely identifies an individual's Facebook account, Meta—or any other ordinary person—can use the FID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In other words, the Pixel allows Meta to know what video content one of its users viewed on MeTV's website.

6. At no point are MeTV users informed about MeTV's dissemination of their individual video-watching preferences to a third party. Nor do MeTV users consent to such sharing through a standalone consent form, as required by the VPPA. As a result, MeTV violates the VPPA by disclosing this information to Meta.

7. On behalf of a Class of similarly situated MeTV users, Plaintiffs seek appropriate relief through this action. Based on the facts set forth in this Complaint, MeTV violated the Video Privacy Protection Act ("VPPA") and is liable for unjust enrichment.

**PARTIES**

8. Each Plaintiff used his or her internet-connected device and web-browsing software installed on that device to visit and watch video content on Defendant's website, www.metv.com, during the Class Period as defined herein.

9. Plaintiff David Vance Gardner is a citizen and resident of Monrovia, California.

10. Plaintiff Jeannetta McElroy is a citizen and resident of Chicago, Illinois.

11. Plaintiff Earl Hayes is a citizen and resident of Dayton, Ohio.

12. Defendant MeTV is a Chicago corporation headquartered at 26 N. Halsted Chicago, Illinois 60661. MeTV is owned by Weigel Broadcasting.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

14. This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

15. This Court has personal jurisdiction over MeTV because its principal place of business is within this District, and it has sufficient minimum contacts in Illinois to render the exercise of jurisdiction by this Court proper and necessary.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### David Vance Gardner

17. Plaintiff Gardner is a MeTV subscriber and a Facebook user.

18. Mr. Gardner has maintained a MeTV account since at least 2019 and is thus a subscriber to MeTV's services.

3

19. Mr. Gardner provided MeTV with his PII, including at least his name and email address, when subscribing to its services.

20. Mr. Gardner's Facebook profiles include his name and other personal details.

21. Mr. Gardner watches prerecorded video content on MeTV regularly.

22. Mr. Gardner visited MeTV's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on MeTV that he uses for Facebook.

23. Mr. Gardner has seen targeted advertisements on Facebook after watching related videos on the MeTV website.

### Jeannetta McElroy

24. Plaintiff McElroy is a MeTV subscriber and a Facebook user.

25. Ms. McElroy has maintained a MeTV account since approximately 2020 and is thus a subscriber to MeTV's services.

26. Ms. McElroy provided MeTV with her PII, including at least her name and email address, when subscribing to its services.

27. Ms. McElroy's Facebook profile includes her name and other personal details.

28. Ms. McElroy watches prerecorded video content on MeTV regularly.

29. Ms. McElroy visited MeTV's website to request and watch prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to Facebook. She also uses the same device to request and watch prerecorded videos on MeTV that she uses for Facebook.

30. Ms. McElroy has seen targeted advertisements on Facebook after watching related videos on the MeTV website.

**Earl Hayes**

31. Plaintiff Hayes is a MeTV subscriber and a Facebook user.

32. Mr. Hayes has maintained a MeTV account since at least 2020 and is thus a subscriber to MeTV's services.

33. Mr. Hayes provided MeTV with his PII, including at least his name and email address, when subscribing to its services.

34. Mr. Hayes's Facebook profile includes his name and other personal details.

35. Mr. Hayes watches prerecorded video content on MeTV regularly.

36. Mr. Hayes visited MeTV's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on MeTV that he uses for Facebook.

37. Mr. Hayes has seen targeted advertisements on Facebook after watching related videos on the MeTV website.

\* \* \*

38. MeTV sent Plaintiffs' PII, including their FID, as well as the title of each prerecorded video they viewed, to Meta without obtaining their consent through a standalone consent form.

39. Plaintiffs value their privacy while web-browsing and watching videos.

40. Plaintiffs' viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

## COMMON ALLEGATIONS

  A.  **MeTV Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta.**

  41.  MeTV is an American Broadcast television network that airs a variety of television programs from the 1930's through the 1990's.

  42.  MeTV subscribers can access a variety of prerecorded content on MeTV's website, including episodes from classic television shows.

  43.  MeTV therefore provides and delivers prerecorded audiovisual content to its subscribers.

  44.  Plaintiffs requested and viewed prerecorded audiovisual content from MeTV.

  45.  While Plaintiffs and Class members were viewing prerecorded video content on MeTV's website, MeTV transmitted their viewing choices to Meta.

  46.  MeTV's transmission of viewing information to Meta included the specific names of video content viewed by users, as well as the user's FID, a string of numbers unique to each Facebook profile that personally identifies the user.

  47.  Anyone who possesses an FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which contains personal information, often in large quantities.

  48.  A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

49. Just as Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Thus, equipped with an FID and the video content name and URL—all of which MeTV knowingly provides to Meta without appropriate consent from its subscribers—any ordinary person could determine the identity of the MeTV subscriber and the specific video or media content they viewed on MeTV's website.

50. MeTV transmits the FID and video title to Meta in a single transmission, through an invisible tracking tool called a "Meta Pixel."

51. A Meta Pixel is a snippet of a programming code that, once installed on a webpage, sends information to Meta. This transmission occurs when a user views a prerecorded video on MeTV's website.

52. The Pixel is an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Meta; websites use the Pixel in hopes of better targeting their products and services on Facebook to interested consumers. Thus, a business such as MeTV chooses to install the Pixel on its website in order to increase its profits.

53. According to Meta's website, the Pixel allows it "to match your website visitors to their respective Facebook User accounts" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[1]

54. MeTV knew that by installing the Pixel on its website, the Pixel would send Meta information identifying its users and their video-watching habits.

---

[1] https://developers.facebook.com/docs/meta-pixel/get-started (last visited October 26, 2022).

55. Meta's website explains that, to begin using the Meta Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of your website[.]"[2] MeTV made the conscious decision to undertake this installation process.

56. Further demonstrating that MeTV knowingly placed the Pixel in its website code, Meta's website states that "[d]evelopers and marketers can *optionally choose* to send information about" a visitor's activity on its website. (Emphasis added).[3]

57. Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel.

58. Meta benefits from websites like MeTV installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms. In addition, even if the business does not advertise with Facebook, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

59. Using the Meta Pixel likewise benefits MeTV's business by improving its ability to promote its content and services to its users.

60. Through use of the Meta Pixel, MeTV discloses to Meta the full name of each video a user watched, together with the user's FID, thus linking users' viewing content choices and preferences to their Facebook profiles. In other words, this single transmission connects a user's video content with their FID.

---

[2] *Id.*; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited October 24, 2022).

[3] https://developers.facebook.com/docs/meta-pixel (last visited October 26, 2022).

61. MeTV violates and invades the privacy rights of users with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiffs and Class members neither knew of nor authorized, nor otherwise consented to, MeTV's disclosure of their prerecorded video and video-services requests and their identities to Meta.

**B.    MeTV does not Disclose its Use of the Meta Pixel**

62. 53. MeTV's website includes Terms of Service and a Privacy Policy. None of these informs users of MeTV's use of the Meta Pixel or its practice of sharing users' personal information and video content choices with Meta in a way that allows Meta to identify their specific video-watching preferences.

63. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. At no point were Plaintiffs or other MeTV users given a standalone or any consent form disclosing MeTV's practices at issue and requesting user consent. Hence, no user knew of or consented to MeTV's offending practice of sharing video preferences with third parties.

**C.    Plaintiffs and the Class Were Harmed by MeTV's Privacy Invasions.**

64. MeTV shared with Meta the personal information of Plaintiffs and Class members, including their video viewing histories and associated FIDs, which they reasonably expected would be kept private.

65. The personal information MeTV obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information. MeTV's wrongful acquisition and use of their personal, private information deprived Plaintiffs and Class members of control over that information and prevented them from realizing its full value for themselves.

9

66. MeTV's conduct caused economic harm to Plaintiffs and Class members whose PII diminished in value when MeTV made this information available to Meta.

67. The harms described above are aggravated by MeTV's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video viewing histories.

## CLASS ACTION ALLEGATIONS

68. Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class and Subclass:

> **Nationwide Class**: All persons in the United States who subscribed to MeTV, viewed prerecorded video content on MeTV, and used Facebook during the time Meta's Pixel was active on MeTV.

69. The "Class Period" is from January 1, 2013 to the present.

70. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

71. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

72. **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

73. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a. Whether MeTV's use of the Meta Pixel was without user consent or authorization;

  b. Whether MeTV obtained and shared or caused to be obtained and shared Plaintiffs' and Class members' personal information through tracking using Meta Pixel, which MeTV installed on its webpages;

  c. Whether third parties obtained Plaintiffs' and Class members' personal information as a result of MeTV's conduct described herein;

  d. Whether MeTV's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

  e. Whether MeTV was unjustly enriched as a result of sharing users' information with Meta;

  f. Whether MeTV's acquisition and transmission of Plaintiffs' and Class members' personal information resulted in harm; and

  g. Whether MeTV should be enjoined from engaging in such conduct in the future.

  74. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by MeTV's misconduct at issue—i.e., disclosing users' PII and viewing content to Meta without appropriate consent.

  75. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

  76. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce MeTV to comply with applicable law. Moreover, because the amount of each individual Class member's

claim is small relative to the complexity of the litigation, and because of MeTV's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

77. **Injunctive relief**: MeTV has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

78. All applicable statute(s) of limitations have been tolled by MeTV's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered MeTV's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

79. MeTV was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by MeTV, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION

**Violation of the Electronic Communications Privacy Act (the "VPPA")**
**18 U.S.C. § 2710, *et seq.***
**(On Behalf of the Nationwide Class)**

80. Plaintiffs incorporate and reallege the above factual allegations by reference.

81. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the

"informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

82. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." MeTV is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials—including the prerecorded videos that Plaintiffs viewed—through its online platform that are similar to prerecorded video cassette tapes and those deliveries affect interstate or foreign commerce.

83. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

84. MeTV knowingly caused personal viewing information, including FIDs, concerning Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each plaintiff and Class member to Meta as an individual who viewed MeTV's video content, including the specific prerecorded video materials each such individual watched on MeTV's website. This information allowed Meta to identify each Plaintiff and Class members' specific individual video-viewing preferences and habits.

85. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs are subscribers to MeTV's services providing video content to users on its website and viewed

13

prerecorded videos provided on MeTV's platform. Hence, Plaintiffs are "consumers" under this definition.

86. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. MeTV failed to obtain informed, written consent under this definition.

87. Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(b)(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." MeTV failed to provide an opportunity to opt out as required by the Act.

88. MeTV was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiffs and Class members. MeTV also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because MeTV programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's FID when a user watched a prerecorded video.

89. By knowingly disclosing Plaintiffs' and Class members' personal viewing content, MeTV violated Plaintiffs' and Class members' statutorily protected right to privacy in their prerecorded video-watching habits. *See* 18 U.S.C. § 2710(c).

90. As a result of the above violations, MeTV is liable to Plaintiffs and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or,

alternatively, for "liquidated damages not less than $2,500 per plaintiff." 18 U.S.C. § 2710(c)(2)(A). Under the Act, MeTV is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by MeTV in the future.

## SECOND CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of the Nationwide Class)

91. Plaintiffs incorporate and reallege the above factual allegations by reference.

92. MeTV acted wrongfully by sharing users' FID and viewing content to Meta without their consent.

93. MeTV's practice of sharing users' personal information and viewing content with Meta without their consent, and its failure to disclose this practice, caused MeTV to realize profits it would otherwise not have received, including from its improved ability to promote its content and services to its users and its improved ability to sell advertising space on its website.

94. MeTV's retention of these ill-gotten gains is unjust and inequitable.

95. Accordingly, Plaintiffs, on behalf of themselves and the Class, seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment. There is no adequate remedy at law that would provide redress to Plaintiff and the Class or ensure that MeTV will not deploy the same data practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

A. Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

  B.  Enter judgment in favor of Plaintiffs and the Class;

  C.  Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

  D.  Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

  E.  Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

  F.  Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

  G.  Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Defendant through its wrongful conduct;

  H.  Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

  I.  Award such other and further relief as the Court deems necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

| | |
|---|---|
| Dated: October 28, 2022 | Respectfully submitted, |

By: */s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
Fax: (865) 522-0049
gklinger@milberg.com

Adam E. Polk (*Pro Hac Vice* to be Filed)
Simon Grille
Jessica R. Doker (*Pro Hac Vice* to be Filed)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com

Philip L. Fraietta
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
(646) 837-7150
pfraietta@bursor.com

*Attorneys for Plaintiffs*