UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Vance Gardener, Jeannetta McElroy, *and* Earl Hayes, *individually and on behalf of all others similarly situated*, *Plaintiffs*, v. MeTV, *a National Limited Partnership*, *Defendant*. | No. 22 CV 5963 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs David Vance Gardner, Jeannetta McElroy, and Early Hayes ("Plaintiffs") have sued Defendant MeTV on behalf of themselves and a putative nationwide class, alleging that MeTV unlawfully disclosed their personal "video viewing" history and associated unique Facebook identification ("FID") in violation of the Video Privacy Protection Act ("VPPA" or "Act"), 18 U.S.C. § 2710. [Dkt. No. 1 at ¶¶ 80–90.] Plaintiffs also bring claims against MeTV for unjust enrichment. [*Id.* ¶¶ 91–95.] Before the Court is MeTV's motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which the Court grants without prejudice. [Dkt. No. 15.]

**I.  Background**[1]

MeTV "is an American Broadcast television network" that owns and operates

---

[1]  For purposes of MeTV's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint and draws all reasonable inference in Plaintiffs' favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019).

1

metv.com, a website that hosts "prerecorded content . . . including episodes from classic television shows" from "the 1930's through the 1990's." [Dkt. No. 1 at ¶¶ 41–42.] Plaintiffs David Vance Gardner, Jeannetta McElroy, and Early Hayes ("Plaintiffs") are "Facebook user[s]" who watch videos hosted on MeTV's website, "using the same browser that [they] use[] to log in to Facebook, including while [they] were] logged in to Facebook." [*Id.* ¶¶ 17, 22, 24, 29, 31, 36.]

As users of the social media platform Facebook, Plaintiffs allege that they are assigned a unique Facebook identification ("FID"), "a string of numbers unique to each Facebook profile that personally identifies the user." [*Id.* ¶¶ 4, 46.] Plaintiffs allege that this unique identifier allows "anyone who possesses an FID . . . to quickly and easily locate, access, and view the corresponding Facebook profile, which contains personal information, often in large quantities." [*Id.* ¶ 47.]

Plaintiffs further allege that they are "MeTV subscriber[s]" by virtue of having MeTV accounts. [*Id.* ¶¶ 17–18, 24–25, 31–32.] Plaintiffs allege that they provided certain personally identifiable information ("PII") when they signed up for a MeTV account, including "at least" their names and email addresses. [*Id.* ¶¶ 19, 26, 33.]

The complaint alleges that "MeTV collects and shares users' personal information with Meta using a 'Meta Pixel.'" [*Id.* ¶ 3, 50–51.] Meta owns the social media platform Facebook. [*Id.* ¶ 1.] The Meta Pixel is "snippet of programming code that, once installed on a webpage, sends information to Meta . . . when a user views a prerecorded video on MeTV's website." [*Id.* ¶¶ 3, 51.] Plaintiffs further allege that "[t]he [Meta] Pixel is an advertising tool that allows website owners to track visitor

2

actions on their websites for purposes of sending the corresponding information to Meta." [*Id.* ¶ 52.] Using the Meta Pixel benefits MeTV by potentially allowing them to "better target[] their products and services on Facebook to interested consumers." [*Id.* ¶ 52.] Plaintiffs contend that MeTV, through its usage of the Meta Pixel, sent Meta their PII, "the full name of each video a user watched," and their FID "to Meta without obtaining their consent through a standalone consent form." [*Id.* ¶ 38.] Plaintiffs allege that they have "seen targeted advertisements on Facebook after watching related videos on the MeTV website." [*Id.* ¶¶ 23, 30, 37.]

On October 28, 2022, Plaintiffs filed the present suit against MeTV. [Dkt. No. 1.] Plaintiffs allege that MeTV violated VPPA by knowingly disclosing their PII to Meta without the statutorily required consent (Count One) and that MeTV was subsequently unjustly enriched by its unlawful disclosure (Count Two). [*Id.* ¶¶ 80–95.] Plaintiffs seek statutory damages and injunctive relief. [*Id.* at 15–16.]

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot by themselves satisfy Rule 8's requirement that the complaint show the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

When considering whether the complaint demonstrates a plausible right to relief, the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In contrast, "legal conclusions and conclusory allegations" are "not entitled to this presumption of truth" and should not be considered when deciding on a motion to dismiss. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). If the Court finds, after eliminating any legal conclusions and considering only the plaintiff's factual allegations, that the complaint does not show a plausible right to relief, then the motion to dismiss should be granted. *See Iqbal*, 556 U.S. at 679.

## III. Analysis

MeTV seeks to dismiss Plaintiffs' complaint in its entirety but focuses its arguments primarily on Plaintiffs' VPPA claim. *See generally* [Dkt. No. 16]. "Enacted in 1988 in response to the *Washington City Paper's* publication of then-Supreme Court nominee Robert Bork's video rental history," the VPPA prohibits "video tape service provider[s]," like MeTV, from "disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir. 2014) (citing 18 U.S.C. § 2710(b)(1)). PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Act defines a "video tape service provider" as "any person, engaged in the business, . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," *id.* § 2710(a)(4), and a "consumer" as "any

4

renter, purchaser, or subscriber of goods or services from a video tape service provider," *id.* § 2710(a)(1). The VPPA provides exceptions to the disclosure prohibition, including when the disclosure is incident to the video tape service provider's ordinary course of business. *Id.* § 2710(a)(2).

MeTV argues that the VPPA claim should be dismissed for three reasons: (1) Plaintiffs are not "consumers" under the Act, (2) Plaintiffs insufficiently plead that MeTV "knowingly disclose[d]" to Meta "specific video materials," and (3) even if Plaintiffs' allegations successfully pled a VPPA claim, MeTV's conduct falls under the exception for its ordinary course of business.[2] [Dkt. No. 16.]

As to the question of whether Plaintiffs are "consumers," Plaintiffs concede that they do not qualify as "renters" or "purchasers" under the Act. [Dkt. No. 23 at 4.] Rather, Plaintiffs contend they are "subscribers," an undefined term within the VPPA. [*Id.*] The absence of a definition for this term has spurred voluminous briefing in this matter, [Dkt. Nos. 30, 32, 36–37], as well as a variety of recent opinions from other district courts. *Compare, e.g.*, *Carter v. Scripps Networks, LLC*, 2023 WL 3061858, at *6–7 (S.D.N.Y. Apr. 24, 2023) (dismissing similar VPPA claim); *and*

---

[2] Plaintiffs referenced MeTV's website, including specifically their viewing of its video content, in their complaint, such that its contents can be incorporated by reference. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment."). Alternatively, the Court can take judicial notice of MeTV's webpage. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (finding that where a party refers to another party's website in its briefing, the district court may take judicial notice of the entire contents of that website). Plaintiffs further do not object to the Court taking notice of MeTV's website, only to specific language on Meta's website. [Dkt. No. 23 at 7 n.2.] Consequently, the Court can properly consider MeTV's website in this order.

5

*Jefferson v. Healthline Media, Inc.*, 2023 WL 3668522, at *2–3 (N.D. Cal. May 24, 2023) (dismissing similar VPPA claim); *with Harris v. Pub. Broad. Serv.*, 2023 WL 2583118, at *2–3, 7 (N.D. Ga. Mar. 20, 2023) (denying motion to dismiss similar VPPA claim); *and Goldstein v. Fandango Media, LLC*, 2023 WL 3025111, at *4 (S.D. Fla. Mar. 7, 2023) (denying a motion to dismiss similar VPPA claim). As another district court recently remarked, this "steady stream" reflects "that these issues—and the viability of extending VPPA liability to website owners that provide video content and use the Meta Pixel—remain unsettled." *Jefferson*, 2023 WL 3668522, at *2.

MeTV argues that Plaintiffs are not "subscribers" because their relationship with MeTV is too insubstantial. [Dkt. No. 16 at 2.] MeTV notes that anyone can view videos on MeTV's website, without the need for a login, which is patently insufficient to be a "subscriber," as Plaintiffs have not provided personal information in return for access to video content. [*Id.* at 5.] Plaintiffs argue they are subscribers under the Act because their creation of MeTV profiles reflects "an ongoing commitment or relationship with MeTV," regardless of "whether non-subscribers can watch the same videos for free." [Dkt. No. 23 at 5 (internal quotation marks omitted).]

Because the parties seek to define the term "subscriber" and it is undefined in the statute, this Court, as others have, must "ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted the statute." *Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1075 (7th Cir. 2023) (citing *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019)). When addressing questions of statutory interpretation, the Court begins with the text of the

6

statute. *See United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016). When the statute is clear, the inquiry "starts and stops" there. *United States v. All Funds on Deposit with R.J. O'Brien & Assoc.*, 783 F.3d 607, 622 (7th Cir. 2015). "Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). The Seventh Circuit has noted that "it can sometimes be helpful to consider dictionary definitions from the time of the statute's enactment" but should be used with some caution, as they "offer many definitions, both broad and narrow." *Astrellas*, 66 F.4th at 1075.

The Court agrees with Plaintiffs that to be a "subscriber" under the Act, Plaintiffs need not pay for access to video content. [Dkt. No. 23 at 4.] Other circuit courts have similarly found that VPPA does not require payments. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (citation omitted) (noting "[a]lthough most definitions of 'subscribe' or 'subscriber' involve payment of some sort, not all do"); *see also Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487 (1st Cir. 2016) ("if the term 'subscriber' required some sort of monetary payment, it would be rendered superfluous by the two terms preceding it"). As another district court deciding this same issue noted, "Congress could have easily specified that 'consumer' meant 'any renter, purchaser, or paid subscriber,' but chose not to qualify 'subscriber' in that fashion." *Jefferson*, 2023 WL 3668522, at *3.

The Court does not agree, however, with Plaintiffs' argument that the allegations that it opened an account separate and apart from viewing video content on MeTV's website is sufficient to render them "subscribers" under the Act. [Dkt. No.

7

23 at 4–6.] *Carter* is most persuasive on this point. In that case, the plaintiffs alleged that they subscribed to Defendant HGTV's electronic newsletters and independently watched HGTV videos on its website, www.hgtv.com. 2023 WL 3061858, at *1. The Court found these factual allegations insufficient, as "the Complaint [did] not include facts that plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience." *Id.* at *6. Rather, plaintiffs "were subscribers to newsletters, not subscribers to audio visual materials." *Id.* The Court concluded that video content was free to access by any person, and Plaintiffs did not allege "that a newsletter subscription was required to access those videos, functioned as a login, or gave newsletter subscribers extra benefits as viewers." *Id.* "Plaintiffs were free to watch or not watch hgtv.com videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site." *Id.*

The *Carter* plaintiffs are indistinguishable from the Plaintiffs here: both had subscriptions (newsletter or website) of a kind that were unconnected to their ability to access video content. *Compare id.* at *1 *with* [Dkt. No. 1 at ¶¶ 17–18, 24–25, 31–32]. Neither set of plaintiffs paid for this privilege, made any commitment to do so, otherwise exchanged anything of value to do so, or received special access to certain content. Like the plaintiffs in *Carter*, Plaintiffs here were subscribers to a website, "not subscribers to audio visual materials," as they "were free to watch or not watch [MeTV's] videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site." *Carter*, 2023 WL 3061858, at *6.

8

While Plaintiffs characterize *Carter* as an "outlier" [Dkt. No. 36 at 1], another district court confronted with factually similar circumstances also relied on *Carter* to dismiss a plaintiff's VPPA claim, *see Jefferson*, 2023 WL 3668522, at *1. The plaintiff in *Jefferson* subscribed to defendant Healthline's free email list, and thereby provided her name and email address and thereafter watched videos on Healthline's website. *Id.* The *Jefferson* Court found that this was insufficient for Jefferson to be a "subscriber" under the Act, concluding that "a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit." *Id.* at *3. In rejecting the plaintiff's allegations, the Court noted that it was unclear "whether Jefferson receives any kind of publication, let alone any good or service, *in exchange for* signing up for Healthline's email list." *Id.* (emphasis added). These facts are like the present case. Plaintiffs concede that there is no need to open a MeTV account to watch videos on the website. [Dkt. No. 23 at 4–6.] As such, they concede that there is no "exchange" for their handing over of personally identifiable information. *Jefferson*, 2023 WL 3668522, at *3.

Other cases similarly lend credence to the logic in *Carter* and *Jefferson*. *See Yershov*, 820 F.3d at 489 (noting that to use the app in question to stream video content, the plaintiff had to provide personal information, noting that "access was not free of a commitment to provide consideration in the form of that information"); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017) (noting that because the plaintiff "admitted before the district court that he was never required to register for the CNN App" to access video content, he "did not actively provide his

9

personal information to CNN *in exchange* for the CNN App nor has he demonstrated that he manifested his relationship with and commitment to CNN in any meaningful way"). Such an interpretation is also in line with the clear meaning of "subscriber" drawn from dictionaries by other courts. *See Carter*, 2023 WL 3061858, at *4 (S.D.N.Y. 2023) (citing *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015)) ("Conventionally, 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates."); *Jefferson*, 2023 WL 3668522, at *3 (defining "subscribe" as "to enter one's name for a publication or service" or "to receive a periodical or service regularly on order").

Even if the Court were to employ the Eleventh Circuit's multi-factor test from *Ellis*, Plaintiffs' allegations would still be insufficient. *Ellis v. Cartoon Network, Incorporated* held that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." 803 F.3d 1251, 1256 (11th Cir. 2015). Put another way, "[s]ubscriptions involve some or [most] of the following [factors]: payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content." *Id.* (citation omitted). As MeTV points out, only one factor is met here: registration. [Dkt. No. 27 at 2.] While the Seventh Circuit has not weighed in on this issue, this one factor alone seems insufficient.

10

Plaintiffs point to other cases as dispositive of this issue, see [Dkt. No. 23 at 5; Dkt. No. 32 at 1; Dkt. No. 36 at 1–2], but these cases are readily distinguishable. For instance, Plaintiffs cite to cases where the plaintiff registered with the defendant service and in exchange received content itself or special access to content. *See Harris*, 2023 WL 2583118, at *3 (plaintiff "registered for a PBS account and provided Defendant her personal information, including her name, address, email, IP address and cookies" and "[i]n return . . . received periodic newsletters and emails," which the court noted contained "restricted content"); *see also Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *3 (N.D. Ga. Nov. 4, 2022) (plaintiffs provided email address and date of birth to create an online account and in return received periodic newsletters with video content and additionally created a login with WebMD.com). These cases only support MeTV's contention: the video content available on its website can be accessed by anyone, and because Plaintiffs receive nothing "in return" for a MeTV login, they are not "subscribers" under the Act. [Dkt. No. 16 at 5; Dkt. No. 27 at 1–3.] Other cases that Plaintiffs urge the Court to follow do not analyze the term "subscriber" in depth. *See Goldstein*, 2023 WL 3025111, at *4 (deferring analysis of whether the plaintiff was a "subscriber" to summary judgment); *see In re Hulu Privacy Litig.*, 2012 WL 3282960, at *7 (N.D. Cal. Aug. 10, 2012) (analyzing whether payment was required for plaintiffs to be "subscribers" under the Act). As such, neither is particularly helpful to the analysis.

Because the Court finds dispositive MeTV's argument that Plaintiffs are not consumers under the Act, it does not address the remainder of MeTV's arguments in

favor of dismissal. Plaintiffs' unjust enrichment claim is dependent on its VPPA claim, so the Court similarly dismisses it without prejudice. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019) (citing *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)) ("Under Illinois law, unjust enrichment is not a separate cause of action."). Accordingly, the Court grants MeTV's motion and dismisses Plaintiffs' complaint without prejudice.

**IV. Conclusion**

For the reasons stated below, MeTV's motion is granted. [Dkt. No. 15.] Plaintiffs are ordinarily given at least one opportunity to amend their complaint as it is not "*certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." See *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (emphasis in original). Plaintiffs may file an amended complaint on or before July 27, 2023, if they can do so consistent with this Order.

Enter: 22-cv-5963
Date: July 6, 2023

_____
Lindsay C. Jenkins
United States District Judge

12