UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Vance Gardner and Gary Merchant, *individually and on behalf of all other similarly situated*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>MeTV, *a National Limited Partnership*,<br><br>   *Defendant*. | No. 22 CV 5963<br><br>Judge Lindsay C. Jenkins |

**ORDER**

      Plaintiffs David Vance Gardner and Gary Merchant[1] ("Plaintiffs"), on behalf of themselves and a similarly situated class, have filed an Amended Complaint against Defendant MeTV. [Dkt. 39.] Like the original complaint, Plaintiffs allege that MeTV unlawfully disclosed their personal "video viewing" history and associated unique Facebook identification ("FID") in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.* (Count One). [*Id.* at 17–19.][2] Plaintiffs also seek recovery under the theory of unjust enrichment (Count Two). [*Id.* at 20–21.] Before the Court is MeTV's second motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. 41.] For the reasons stated below, the motion is granted.

---

[1]     The Court addresses two preliminary matters: first, Gardner's last name was misspelled in the case caption of the first dismissal Order (*see* Dkt. 38) and is corrected here. Second, MeTV contends that Merchant's addition to the Amended Complaint was procedurally improper because Plaintiffs did not seek leave to join a party. [Dkt. 42 at 2 n.1 (citing *Robinson v. Dart*, 2014 WL 222711, at *3 (N.D. Ill. Jan. 21, 2014) (explaining that plaintiff should have moved to add additional plaintiffs to the amended complaint instead of simply filing an amended complaint including new plaintiffs).] A court may not dismiss an action for misjoinder but may sever a misjoined claim or party at any time during the lawsuit. *See* Fed. R. Civ. P. 21. Because Merchant satisfies the requirements for permissive joinder under Rule 20, the Court will allow Merchant to proceed as a named plaintiff. *See* Fed. R. Civ. P. 20.

[2]     Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

*Background*[3]

The facts alleged in the Amended Complaint largely track the allegations of the original complaint. [*See generally*, Dkt. 38.] MeTV, an "American Broadcast television network," owns and operates the metv.com website and app, allowing consumers to access a variety of vintage "prerecorded television programs," from "the 1930's through the 1990's." [Dkt. 39, ¶¶8, 16, 27, 38.] Plaintiffs created metv.com accounts and regularly visit the website to watch prerecorded television programs; they also use Facebook, the social media platform owned by Meta Platforms Inc. ("Meta"). [*Id.*, ¶¶1, 16, 24–25, 27, 35–36.] Plaintiffs visited metv.com to "request and watch prerecorded video content" using the same device and browser used to log in to Facebook, including while they were logged in to Facebook. [*Id.*, ¶¶8, 16, 25, 36.]

Plaintiffs allege that they are "MeTV subscribers" by virtue of having MeTV accounts. [*Id.*, ¶¶ 16–17, 27–28, 40.] When creating their accounts, Plaintiffs provided MeTV with their personally identifiable information ("PII"), "including at least [their] zipcode[s] and email address[es]." [*Id.*, ¶¶17, 28.] According to the Amended Complaint, MeTV shares website users' PII with Meta "through the use of a 'Meta Pixel' or 'Pixel' programming code that, once installed on a webpage," transmits users' "prerecorded video content viewing choices" and FID to Meta when the user views a prerecorded video on MeTV's website. [*Id.*, ¶¶2–3, 51–52, 56–58.] Although Plaintiffs agreed to MeTV's "use and retention of their personal information in the manner authorized by the Terms of Use," Plaintiffs "did not consent to the transmission of their identit[ies] and video selection choices to Meta," and have "seen targeted advertisements on Facebook after watching related videos on MeTV's website." [*Id.*, ¶¶20, 26, 31, 37, 43, 46–47.]

After the Court dismissed the original complaint for failure to state a claim, Plaintiffs filed an Amended Complaint. [Dkt. 39.] It is distinct from the original complaint in three notable ways: first, it alleges that "[a] consumer who visits the MeTV website or downloads the MeTV app is free to watch programming without creating an account or accepting the MeTV Terms of Use." [*Id.*, ¶39.] Second, it includes allegations about different "benefits" or "services" that Plaintiffs obtained through their metv.com accounts. [*Id.*, ¶¶18–19, 22, 29–30, 33, 40–41.] Finally, it alleges that Plaintiffs made certain "commitments" to MeTV by agreeing to the Terms of Use and Privacy Policy. [*Id.*, ¶¶21, 32, 42, 46.] Thereafter, MeTV filed this motion to dismiss.

---

[3] For MeTV's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the Amended Complaint and draws all reasonable inferences in Plaintiffs' favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). The Court also relies on the facts and conclusions drawn in the first dismissal Order. [*See* Dkt. 38.] In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

### *Legal Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the pleadings. "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

### *Discussion*

To state a claim under VPPA, a plaintiff must first qualify as a "consumer." 18 U.S.C. § 2710(a)(1). The Act provides that a "consumer" is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* In their response to the initial motion to dismiss, Plaintiffs argued they were "subscribers" within the meaning of VPPA because they registered for accounts on MeTV's website. [Dkt. 38 at 5–6.] The Court explained that although Plaintiffs were subscribers to a website, they were "not subscribers to audio visual materials" as contemplated by VPPA because Plaintiffs "were free to watch or not watch MeTV's videos without any type of obligation," no different than any other visitor to the website. [*Id.* at 8.] Because Plaintiffs' metv.com website registration was "unconnected to their ability to access video content,"—they neither "paid for this privilege, made any commitment to do so, otherwise exchanged anything of value to do so, or received special access to certain content"—the Court concluded that dismissal was appropriate. [*Id.*]

As discussed in its prior Order, the term "subscriber" is undefined in the statute, so the Court must "ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted the statute." *Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1075 (7th Cir. 2023) (citing *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. ----, 139 S. Ct. 2356, 2362 (2019)). Since this Court issued its previous dismissal Order, the Seventh Circuit has not had an opportunity to consider the issue. But recent district court opinions interpreting the term have concluded that, based on the plain reading of the statute, to be a "subscriber," the plaintiff must allege "a factual nexus or relationship" between the subscription provided and the "defendant's alleged actionable video content." *Tawam v. Feld Ent. Inc.*,--- F.Supp.3d ----, 2023 WL 5599007, at *5–6 (S.D. Cal. July 28, 2023) (plaintiffs who signed up for an email mailing list and separately viewed videos on defendant's website had not plausibly alleged the existence of a nexus between the alleged subscription and the video content at issue); *Salazar v. Paramount Glob.*, --- F.Supp.3d ----, 2023 WL 4611819, at *12–*13 (M.D. Tenn. July 18, 2023) (plaintiff was not a subscriber within the meaning of VPPA by virtue of registering or signing up for a newsletter because there was no allegation plaintiff accessed audio visual content through the newsletter). This conclusion aligns with the reasoning in the cases cited in this Court's earlier Order. [Dkt. 38 at 5–6 (citing *Carter v. Scripps Networks, LLC*, --- F.Supp.3d ----, 2023

3

WL 3061858, at *6–7 (S.D.N.Y. Apr. 24, 2023); *Jefferson v. Healthline Media, Inc.*, --- F.Supp.3d ----, 2023 WL 3668522, at *2–3 (N.D. Cal. May 24, 2023)).]

Having been given an opportunity to amend, Plaintiffs still do not allege that they can only access MeTV's video content by registering for a MeTV account. Indeed, the Amended Complaint alleges just the opposite. [Dkt. 39, ¶ 39 ("A consumer who visits the MeTV website or downloads the MeTV app is free to watch programming without creating an account or accepting the MeTV Terms of Use.").] Given that Plaintiffs had the same access to videos on MeTV's website as any other visitor to the site, the Court concludes, as it did before, that Plaintiffs are not "subscribers" within the meaning of VPPA.

In their response brief, Plaintiffs maintain that by registering for a MeTV account and accepting the Terms of Use, they were provided special benefits that enhanced their viewing experience, including "video-related benefits or services unavailable to non-subscribers." [Dkt. 48 at 5.] According to Plaintiffs, these special benefits include, for instance, email updates about television programming; the ability to create a schedule of television programs to watch; the ability to set reminders for certain television programs; access to MeTV's channel finder feature; the ability to receive notification alerts about selected shows; and the ability to leave likes and replies to comments on specific programs. [Dkts. 39, ¶¶ 19, 22, 40–41; 48 at 5–6.] Plaintiffs argue that because they provided their personal information in exchange for access to these "unique, video-related benefits," they are "subscribers" under VPPA. [Dkt. 48 at 2–3, 6.] The Court disagrees.

As already explained, cases addressing this question have generally required a plaintiff to allege a link between the subscription benefits or services received and the defendant's audio-visual content. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("'[S]ubscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity"); *Golden v. NBCUniversal Media, LLC*, --- F.Supp.3d ----, 2023 WL 5434378, at *11 (S.D.N.Y. Aug. 23, 2023) (dismissing VPPA complaint because it was devoid of allegations linking a newsletter sign-up to the ability to view today.com's video offerings, noting that to qualify under VPPA a person must "subscribe '*to audio visual materials, not just any products or services from a video tape provider.*'" (emphasis added) (quoting *Salazar v. National Basketball Ass'n*, --- F.Supp.3d ----, 2023 WL 5016968, *8 (S.D.N.Y. Aug. 7, 2023))); *Carter*, 2023 WL 3061858, at *6 (explaining that the VPPA's statutory history also "reflects an intent that a customer's non-video transactions play no part in a defendant's liability under the VPPA.").

Here, the Amended Complaint alleges no link between registering for a metv.com account and access "to exclusive or restricted content." *Ellis*, 803 F.3d at 1257. As MeTV points out, the enhancements described in the Amended Complaint relate to MeTV's television broadcasting services, not to any video watching

4

experiences on metv.com. Nor does the Amended Complaint allege facts concerning payment, delivery of videos Plaintiffs would not otherwise have access to, or "any commitment or establish[ing] any relationship that would allow him to have access to exclusive or restricted content." *Id*. Thus, the Court does not agree that the Amended Complaint "readily satisfy[ies]" the multi-factor subscriber test articulated by the Eleventh Circuit in *Ellis*. [Dkt. 48 at 8.] Plaintiffs cite to at least one recent case in support of their position, *Saunders v. Hearst Television, Inc.*, --- F.Supp.3d ---, 2024 WL 126186 (D. Mass. Jan. 11, 2024), but the Court agrees that the "weight of authority . . . rightly rejects" their theory. *Golden*, 2023 WL 5434378, at *12.

The unique benefits described in the Amended Complaint, which Plaintiffs received as a result of registering for an account, "were entirely independent of the audio-visual content" consumed on metv.com's website. *Pileggi v. Washington Newspaper Pub. Co., LLC*, 2024 WL 324121, at *10 (D.D.C. Jan. 29, 2024). Because the Amended Complaint does not allege that registering for an account provided Plaintiffs access to video content that members of the public do not have, they are not "subscribers" within the meaning of VPPA. 18 U.S.C. § 2710(a)(1).[4] Count One is dismissed. Plaintiffs' unjust enrichment claim (Count Two) is also dismissed because unjust enrichment is not a separate cause of action. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019) (citing *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011)).

## *Conclusion*

For the reasons stated above, MeTV's motion to dismiss for failure to state a claim is granted. [Dkt. 41.] MeTV requests a dismissal with prejudice and the Court agrees that such a dismissal is appropriate. Plaintiffs have received their opportunity to amend, (see *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (citations omitted), so the Court dismisses the First Amended Complaint with prejudice.

Enter: February 15, 2024
Date: 22-cv-5963

Lindsay C. Jenkins
United States District Judge

---

[4] The Court finds dispositive MeTV's argument that Plaintiffs are not consumers under the Act, so it does not address the remainder of MeTV's arguments in favor of dismissal.